## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

DEBRA RUSTAND; MARIE
VENTURA, f/k/a MARIA PAMART;
and RONALD HART,

      Plaintiffs,

v.                               Case No: 8:21-cv-1518-WFJ-AAS

VERIZON BUSINESS NETWORK
SERVICES LLC,

      Defendant.

_____/

## ORDER

This matter comes before the Court on the Motion for Summary Judgment

filed by Defendant Verizon Business Network Services LLC ("Verizon"). Dkt. 52.

Plaintiffs Debra Rustand, Marie Ventura, and Ronald Hart (collectively

"Plaintiffs") responded in opposition, Dkt. 73, to which Verizon replied, Dkt. 77.

Upon careful consideration, the Court grants Verizon's motion.

## BACKGROUND

Plaintiffs are current and former Verizon employees seeking to recover

unpaid sales commissions from Verizon. Dkt. 1-1 ¶¶ 6, 20−22, 27. As sales

employees, Plaintiffs were responsible for marketing Verizon's services and

assisting customers. *Id.* ¶ 23. Plaintiffs received base pay while working in these

positions. Dkt. 53 at 2−4. Plaintiffs also earned commissions based on the terms of their yearly Sales Compensation Plans (hereinafter the "Plans"). Dkt. 1-1 ¶ 25. The Plans set forth the types of transactions deemed eligible for commission and provided formulas for calculating commissions. *See, e.g.*, Dkt. 54-4 at 8−18. According to Plaintiffs, Verizon failed to pay Plaintiffs certain commissions in accordance with the Plans' terms. Dkt. 1-1 ¶ 27.

Based on these allegations, Plaintiffs filed this suit in the 6th Judicial Circuit in and for Pinellas County, Florida, on May 13, 2021. *Id.* at 7−14. Verizon thereafter removed the case to this Court. Dkt. 1. Plaintiffs' Complaint contains three alternatively pled counts: (I) breach of contract; (II) unjust enrichment; and (III) quantum meruit. Dkt. 1-1 ¶¶ 46−61. Each Plaintiff contends he or she is owed commissions under specific Plans. Specifically, Plaintiff Rustand seeks unpaid commissions under the 2020 and 2021 Plans, while Plaintiff Hart seeks the same under the 2019 and 2020 Plans. Dkt. 53 at 2. Plaintiff Venture bases her claims on the 2018, 2019, and 2020 Plans. *Id.* at 3.

With the Court having previously denied Verizon's motion to dismiss, *see* Dkt. 23, Verizon now moves for summary judgment on Plaintiffs' claims.

## LEGAL STANDARD

A district court should grant summary judgment only when it determines that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue of fact is "material" if it is a legal element of the claim that might affect the outcome of the case. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). An issue of fact is "genuine" if the record, in its entirety, could lead a rational trier of fact to find for the nonmovant. *Id.* The moving party bears the burden of demonstrating that no genuine issue of material fact exists. *Id.*

In deciding a motion for summary judgment, a court must resolve all ambiguities and draw all inferences in favor of the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004). Upon doing so, the court must determine whether a rational jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the inferences arising from undisputed facts, a court should deny summary judgment. *Allen*, 121 F.3d at 646.

## ANALYSIS

In moving for summary judgment, Verizon contends that Plaintiffs' claims of breach of contract must fail because the Plans do not constitute contracts. Dkt. 52 at 3. Even if the Plans do amount to contracts, Verizon asserts that Plaintiffs have not established a breach or damages. *Id.* at 8, 17. Verizon also avers that

3

Plaintiffs cannot prevail on their unjust enrichment and quantum meruit claims because, inter alia, Plaintiffs were compensated for their work via base pay and other commissions. *Id.* at 21−25. The Court considers Verizon's assertions in turn.

## I. Breach of Contract

To establish a breach of contract claim under Florida law, a plaintiff must show: "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citing *Friedman v. N.Y. Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008)). Verizon contends that Plaintiffs cannot satisfy any of these elements. Dkt. 73 at 5.

Concerning the first element, a plaintiff establishes the existence of a contract by pleading: "(1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms." *Vega*, 564 F.3d at 1272 (citations omitted). Yet "[i]t is well established Florida law that policy statements contained in employment manuals do not give rise to enforceable contract rights in Florida unless they contain specific language which expresses the parties' explicit mutual agreement that the manual constitutes a separate employment contract." *Id.* at 1273 (quoting *Quaker Oats Co. v. Jewell*, 818 So. 2d 574, 576−77 (Fla. 5th DCA 2002)). Courts have consistently applied this well-established law to compensation plan documents. *See, e.g.*, *id.*; *OneSource Facility Servs., Inc., v. Mosbach*, 508 F.

Supp. 2d 1115, 1120−24 (M.D. Fla. 2007); *Butterworth v. Lab'y Corp. of Am. Holdings*, 581 F. App'x 813, 820 (11th Cir. 2014).

Here, the Plans contain no language indicating that the parties explicitly agreed for the Plans to constitute binding employment agreements. Rather, each Plan expressly disavows any guarantee of employment, compensation, or benefits. *See, e.g.*, Dkt. 54-4 at 21 ("No statement in this Plan constitutes a guarantee of employment, or continued employment or payment of compensation or benefits of any kind."). The Plans also provide Verizon with "the right to change or discontinue" the Plans "at any time." *See, e.g.*, *id.* at 9. The Plans afford no such right to Plaintiffs. Under the Plans, Verizon further retains "the right to assign Plan Participants to another Plan or to remove them from eligibility under their current Plan at any time at its own discretion[.]" *See, e.g.*, *id.* By executing the Statement of Acceptance found on the last page of each Plan, Plaintiffs confirmed that they "read and understood the terms" therein. *See, e.g.*, *id.* at 22.

Courts assessing similar compensation plans have determined that such plans do not amount to contracts under Florida law. *See Vega*, 564 F.3d at 1273 (compensation plan was not a contract where express terms provided that (1) plan was not a contract or promise of benefits, (2) employer had sole discretion to change or discontinue plan, and (3) employer had sole discretion to determine what types of transactions qualified for commissions); *see also Mosbach*, 508 F. Supp.

2d at 1123−24 (compensation plan was not a contract where (1) language did not indicate plan was an employment contract, and (2) employer retained sole discretion to audit results and modify or terminate plan at any time).

Nevertheless, in insisting that the Plans are contracts, Plaintiffs point to *Focus Management Group USA, Inc. v. King*, 171 F. Supp. 3d 1291 (M.D. Fla. 2016). While performance-based compensation terms in *King* were found to constitute a binding agreement, the facts of that case are distinguishable. The compensation terms at issue in *King* were located within an offer letter in which the defendant "expressly offered" to pay the plaintiff bonuses "as an incentive to secure him as an employee." *Id.* at 1299. The *King* court explained that these compensation terms were "interwoven with the terms of [the plaintiff's] employment," as "performance-related compensation was part of the 'aggregate compensation opportunities' offered to meet [the plaintiff's] 'expectations.'" *Id.* at 1298 (quoting offer letter).

Here, the Plans' terms were neither interwoven with any terms of Plaintiffs' employment nor offered to secure the same. *See, e.g.*, Dkt. 54-4 at 21 ("No statement in this Plan constitutes a guarantee of employment, or continued employment[.]"). Each Plaintiff acknowledged at his or her deposition that they were not guaranteed commissions based on these terms. *See* Dkt. 54 at 16 (Hart); Dkt. 55 at 12 (Rustand); Dkt. 56 at 6 (Ventura).

6

Drawing all inferences in Plaintiffs' favor, as the Court must at this stage, the Court finds that the Plans do not amount to contracts. No language therein suggests that the Plans were meant to be employment contracts or otherwise create enforceable contract rights. The Court's determination is further based upon the Plans' express provisions that disclaim any guarantees of compensation and afford Verizon the unilateral discretion to, among other thing, modify or terminate the Plans.

With Plaintiffs failing to establish the existence of a contract, the Court need not address whether Plaintiffs have established a breach and damages. Verizon is entitled to summary judgment on Plaintiffs' breach of contract claim.

## II. Unjust Enrichment

The Court next considers Plaintiffs' alternatively-pled unjust enrichment claim. Unjust enrichment is an equitable remedy "based on a legal fiction created by courts to imply a 'contract' as a matter of law." *Tooltrend, Inc. v. CMT Utensili, SRL*, 198 F.3d 802, 805 (11th Cir. 1999). The law will essentially create an agreement between parties where it would be unjust for one party to have received a benefit from the other without paying fair value for it. *Id.* "The primary focus in this analysis is not whether the plaintiff has been wronged, but whether the defendant has unjustly knowingly received and accepted a benefit for which it has not been paid." *Com. Repairs & Sales, LLC v. Signet Jewelers Ltd.*, No. 8:17-cv-

2439-T-60JSS, 2019 WL 6251342, at *3 (M.D. Fla. Nov. 22, 2019) (first citing *Tooltrend*, 198 F.3d at 808; and then *Della Ratta v. Della Ratta*, 927 So. 2d 1055, 1060 n.2 (Fla. 4th DCA 2006)).

To succeed on an unjust enrichment claim, a plaintiff must show that: (1) he or she conferred a benefit on the defendant; (2) the defendant had knowledge of the benefit; (3) the defendant accepted or retained the benefit; and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it. *Tooltrend*, 198 F.3d at 805. Verizon contends that Plaintiffs cannot establish inequitable circumstances necessary to satisfy the fourth element. Dkt. 52 at 22−24. The Court agrees.

It is undisputed that Plaintiffs provided benefits to Verizon in the form of sales and marketing services and that Verizon knowingly accepted that benefit. However, it is equally undisputed that Plaintiffs received compensation from Verizon for their work. This compensation took the form of base pay and commissions separate from those that Plaintiffs claim they are owed. Plaintiff Hart, who seeks additional commissions under the 2019 and 2020 Plans, received total compensation of $274,204.06 in 2019 and $195,061.43 in 2020. Dkt. 53 at 2. Similarly, Plaintiff Ventura, who claims she is owed unpaid commissions under the 2018, 2019, and 2020 Plans, received total compensation of $158,506.89 in 2018, $147,828.28 in 2019, and $136,190.67 in 2020. Dkt. 53 at 3−4.

8

Plaintiff Rustand, who seeks unpaid commissions under the 2020 and 2021 Plans, also received compensation during those years. Verizon provided her with total compensation of $213,862.98 in 2020. *Id.* at 3. After Plaintiff Rustand ended her employment with Verizon on April 30, 2021, she received year-to-date gross earnings of $51,134.04. Dkt. 55 at 24; Dkt. 55-8 at 62. Plaintiff Rustand was not paid commissions in 2021 because she was subjected to a $42,411 chargeback of her commission advances due to a 2020 sale that had been canceled by her sales team. Dkt. 55 at 41; Dkt. 55-9 at 5−6. Plaintiff Rustand acknowledged that this was a legitimate chargeback. Dkt. 55 at 27.

Given these facts, no reasonable jury could find that Verizon failed to fairly compensate Plaintiffs for their services. This is not a situation in which Plaintiffs worked for free to secure the subject sales. Plaintiffs fail to explain how the base pay and additional commissions they received do not amount to fair compensation for their services. *See Sheedy v. Adventist Health Sys. Sunbelt Healthcare Corp.*, 2018 WL 3538441, at *6 (M.D. Fla. July 23, 2018) ("[T]he only benefit conferred on the Defendant by the Plaintiff was her labor and services, for which she received compensation by means of a salary or wages[.]"); *Yacovella v. Apparel Imports, Inc.*, No. 15-23477-CIV-O'SULLIVAN, 2016 WL 4625620, at *8 (S.D. Fla. Sept. 6, 2016) ("[T]he plaintiff did not work for free and was paid a salary and commissions for his work."). Though Plaintiffs may maintain that they were

9

"wronged" by Verizon's alleged failure to pay specific commissions, that is not the primary focus of an unjust enrichment claim. *See Com. Repairs*, 2019 WL 6251342, at *3. With no indication that Verizon was unjustly enriched by Plaintiffs' services for which it provided compensation, Plaintiffs' unjust enrichment claim fails.

## III. Quantum Meruit

Finally, the Court turns to Plaintiffs' quantum meruit claim. Quantum meruit is a term that courts in Florida have applied to both contracts implied in law and fact, leading to confusion in the case law. *See, e.g.*, *Com. P'ship 8098 Ltd. P'Ship v. Equity Contracting Co.*, 695 So. 2d 383, 387 (Fla. 4th DCA 1997) (explaining that quantum meruit is "used to enforce contracts implied in both law and in fact" and is a term "often used synonymously with the term quasi contract"). This confusion is exacerbated by the fact that both theories can apply to the same set of facts. *Id.*

The distinction between the two theories is of consequence, as "proceeding on a theory of quantum meruit based on a contract implied in law . . . is essentially another way of arguing unjust enrichment." *EA Tapping Servs., LLC v. CDM Constructors Inc.*, 2020 WL 9599762, at *4 (M.D. Fla. Jan. 7, 2020) (citing *Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*, 857 F. Supp. 2d 1294, 1306 (S.D. Fla. Mar. 9, 2012)). However, unlike a contract implied in law, a contract implied

10

in fact imposes liability "based on a tacit promise, one that is inferred in whole or in part from the parties' conduct, not solely from their words." *Com. P'ship*, 695 So. 2d at 385. In other words, the parties have entered into an agreement, but the agreement is not definite enough to be considered an express contract. *Surgery Ctr. of Viera, LLC v. UnitedHealthCare Ins. Co.*, No. 6:20-cv-183-Orl-37LRH, 2021 WL 3117186, at *3 (M.D. Fla. Jan. 12, 2021) (citing *Tooltrend*, 198 F.3d at 806). Such implied contracts require the assent of both parties. *See Tipper v. Great Lakes Chem. Co.*, 281 So. 2d 10, 13 (Fla. 1973).

It is not entirely clear whether Plaintiffs' quantum meruit claim is based on a theory of contract implied in law or in fact.[1] To the extent Plaintiffs' quantum meruit claim is brought pursuant to a contract implied in law theory, the Court has already determined that such a claim for unjust enrichment fails. However, Plaintiffs' quantum meruit claim fails even if based upon a theory of contract implied in fact.

---

[1] In conflating Plaintiffs' quantum meruit and unjust enrichment claims, Verizon seemingly construes the quantum meruit claim as one based on a contract implied in law. *See* Dkt. 52 at 21–25. In their response, Plaintiffs do not clarify the theory underpinning their claim. Dkt. 73 at 4–5. Instead, Plaintiffs only cite authority concerning contracts implied in law. *See Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*, 714 F.3d 1234, 1237 (11th Cir. 2013), *aff'g*, 857 F. Supp. 2d 1294, 1305–06 (M.D. Fla. Mar. 9, 2012) ("[T]he Court treats [plaintiff's] quantum meruit and unjust enrichment claims together under the cause of action encompassed by a contract implied in law."); *Dyer v. Wal-Mart Stores, Inc.*, 535 F. App'x 839, 841–42 (11th Cir. 2013), *aff'g*, No. 8:08-cv-747-T-17-TGW, 2011 WL 13176196 (M.D. Fla. Mar. 4, 2011) ("Plaintiff's assertion of a claim for quantum meruit is the same as Plaintiff's claim for unjust enrichment."); *Aldebot v. Story*, 534 So. 2d 1216, 1217 (Fla. 3d DCA 1988) ("Quantum meruit describes the extent of liability on a contract implied in law.").

Contracts implied in fact are commonly recognized "where services are rendered by one person for another without his expressed request, but with his knowledge, and under circumstances fairly raising the presumption that the parties understood and intended that compensation was to be paid." *Com. P'ship*, 695 So. 2d at 386 (internal quotes omitted). Under those circumstances, "the law implies the promise to pay a reasonable amount for the services." *Id.* The law cannot imply any such promise here, as Plaintiffs cannot show that they had a tacit agreement with Verizon concerning the payment of commissions.

As Verizon emphasizes, Plaintiffs received compensation for their work. Plaintiffs offer no support to suggest that their base pay did not amount to reasonable compensation. And though Plaintiffs received commissions for some sales, Plaintiffs have not pointed to any conduct or circumstances suggesting that Verizon assented to paying Plaintiffs commission for any particular sale. As previously noted, Plaintiffs themselves admitted that Verizon expressly disclaimed guarantees of compensation and retained the sole discretion to modify or terminate its commission programs at any time based on the clear terms of the Plans. Put simply, no contract implied in fact exists here. Verizon is therefore entitled to summary judgment on Plaintiffs' quantum meruit claim, regardless of whether it is based on a theory of contract implied in law or in fact.

12

## CONCLUSION

Based on the foregoing, Verizon's Motion for Summary Judgment, Dkt. 52, is **GRANTED**. The Clerk is directed to enter judgment accordingly and close this case.

**DONE AND ORDERED** at Tampa, Florida, on October 27, 2022.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record